FELDSTEIN v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Term.   March 14, 1907.)

CARRIERS—INJURIES TO PASSENGERS—EVIDENCE—SUFFICIENCY.

In an action for injuries to a passenger on a street car while riding on a bumper, evidence examined, and *held* not to sustain a verdict founded on the assumption that the car on which plaintiff. was riding, which was stalled for lack of power to move, did move backwards, whereby plaintiff was squeezed between such car and an express wagon crossing the street, thereby receiving the injury in suit.

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by Fishel Feldstein against the New York City Railway Company.   From a judgment for plaintiff, defendant appeals.   Reversed, and new trial granted.

Argued before GILDERSLEEVE, P. J., and DAVIS and HENDRICK; JJ.

William E. Weaver, for appellant.

Benjamin Koenigsberg, for respondent.

GILDERSLEEVE, P. J. · The action is brought to recover damages for personal injuries alleged to have been sustained by plaintiff, on December 5, 1905, while riding upon one of defendant's cars.   The plaintiff was on his way to one of the ferries "to see a friend off." It was during the morning rush hour, a few minutes before 8 o'clock. When plaintiff boarded the car, it was already crowded to its full capacity.   Plaintiff got on the "bumper" at the rear of the car.   He testified as follows:

"I saw it would be too late if I waited for another car.  This car was crowded.  I jumped up on the rear, right in the center."

He rode on the car in this way until it reached Ninth street.   The conductor collected his fare while he was standing in that position. The car in question was a Williamburg & Christopher Street Ferry car, which went·north from Delancey street on Avenue A. until it reached Ninth street, when it turned to go west through Ninth street. As the car was passing around a curve it became stalled at the "breaker" or "dead" point·which exists on such a curve, where the "plow" or "shoe" must cross the south-bound track.   The plaintiff swears "the electricity spoiled," with the result that the car stopped.   According to plaintiff's testimony, after the car stopped, it began going backward, and thereby he was caught between the rear of the car and an ex-

press wagon, standing or attempting to cross behind the car, and his foot was crushed, and he received other injuries. He says:

"The car began going backward, and then an express wagon came through. The car then gave me a squeeze between the car and the express wagon. All of the cars coming up stopped also. It gave me a good squeeze, and I began yelling. I got a good squeeze on the foot, and also on the side."

He also says that he did not fall off the bumper when the car stopped, and that he does not know whether the car started again after it had stopped. On cross-examination he testified thus:

"Q. Did you see the wagon that struck you? A. I did not see it, because my face was towards the car, and the wagon was from the back. Q. Was the wagon directly behind you on the back? A. Yes. Q. You did not see it until you were struck? A. I did not see it until the car came back, and then they bumped me again. * * * My back was against the wagon. Q. What kind of a wagon was it? A. I don't know. I did not hear any signal given to back up the car. I did not hear anything. I do not recollect how far the car backed up before I was struck. All I know is when I got this crack in the back."

When recalled, the plaintiff said that he did not see any wagon and that he did not testify that the wagon came up behind him. A friend of the plaintiff testified that he stood inside the car, which was very crowded; that from his position inside the car he observed the car moving backward, and that he heard the plaintiff shout; that he looked back and "found an express wagon crushing him." Again he says: "The express wagon went by and squeezed him." It may, perhaps, be noted here that, although he saw, as he says, his friend fall down in the street, he remained on the car and went on.

When plaintiff rested, defendant moved to dismiss the complaint upon the ground, among others, that plaintiff had not shown himself free from contributory negligence, and that no negligence was shown on the part of defendant. It is the defendant's contention, as shown by the testimony of four witnesses, three of whom, it may be observed, were in defendant's employ, that the accident was caused solely by the express wagon; that the defendant's car did come to a stop upon the curve from Avenue A. into Ninth street, upon the "breaker" or "dead" stop, but that it did not then move either backward or forward, for the reason that its power was cut off, and that the car could not move, and had to stand still until another car came up and pushed it over the "dead" spot. The car stopped, as all agreed, because there was no power. There is no claim that any grade existed here, nor evidence tending to show the existence of such a grade. It would seem that the car could not move backward, for the same reason that it could not go forward. As we have seen, plaintiff says that he "got a good squeeze on the foot, and also on the side," and that "my back was against the wagon."

Defendant's counsel urges that it is highly improbable that, if plaintiff was standing upon the bumper, his side and back would be in contact with the wagon, and that it is a matter of common observation that such a bumper is several feet above the street, and that it projects quite a distance out from the end of the car, so that, if the plaintiff stood on this, his back and his side would be far above the

vehicle's wheels, and that the wheels, being the outermost part of the vehicle, would be the part, if any, that would come into contact with plaintiff, but that the wheels could not get nearer to the car than against the projecting bumper, and that the fact that the vehicle hit plaintiff's back shows that the plaintiff was not standing on the bumper, but down in the street, as claimed by defendant's witnesses. Defendant's counsel also points out that plaintiff was admittedly in such an extreme hurry to get to the steamship landing before his friend sailed that he climbed upon the bumper of the extremely crowded car; and the testimony of Rafkind and Hughes indicates that when the car came to a standstill this anxiety and uneasiness manifested itself in a hasty jump to the street in front of a passing vehicle. The witness Hughes says plaintiff stepped off backwards and fell.

It seems to us that, although there were no exceptions to the charge of the learned trial justice, the verdict was against the weight of evidence on the issue of defendant's negligence. As pointed out by defendant's counsel, it is a verdict that must be founded on the assumption that two cars stalled from lack of any power to move, nevertheless did move, and the preponderance of proof is that they did not move. The verdict is inconsistent with the admitted facts. Moreover, plaintiff was required to exercise the care commensurate with the apparent danger of his position, and there is an absence of testimony showing the exercise of such care. The judgment must be reversed, and a new trial granted.

Judgment reversed, and a new trial granted, with costs to appellant to abide the event. All concur.